UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LLANO FINANCING GROUP, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No.: 2:15-CV-297 |
| | ) |
| RICHARD M. BANNEC | ) |
| and RANDALL G. PRINCE, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on the motion to dismiss and memorandum in support filed by Defendant Richard Bannec on December 16, 2015 (Docket Entries 19, 20).¹ Plaintiff Llano Financing Group filed a response in opposition to the motion on December 30, 2015 (DE 22) and Bannec filed a reply on January 6, 2016 (DE 25). For the reasons discussed below, the motion to dismiss is GRANTED and this case is DISMISSED for lack of subject-matter and diversity jurisdiction.²

---

¹ Neither party mentions this fact, but apparently Defendant Randall Prince died before this lawsuit was filed, as the return of summons (filled out by a private process server) indicates. *See* Affidavit of Special Process Server (DE 10), p. 1.

² Bannec asks the court to dismiss this case with prejudice. Motion to Dismiss, p. 5. Because the court does not reach the merits of the plaintiff's claims, concluding that subject-matter jurisdiction does not exist, dismissal must be without prejudice. "A suit dismissed for lack of jurisdiction cannot also be dismissed 'with prejudice'; that's a disposition on the merits, which only a court with jurisdiction may render." *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004); *see also*, *Johnson v. Illinois Commerce Commission*, 176 Fed.Appx. 662, 663, 2006 WL 906442, at *1 (7th Cir. 2006) (dismissal for lack of subject matter jurisdiction is without prejudice) (citing *Enk v. Brophy,* 124 F.3d 893, 898 (7th Cir. 1997)). That said, the Seventh Circuit has also held that "'in rare circumstances, a district court may use its inherent power to dismiss with prejudice (as a sanction for misconduct) even a case over which it lacks jurisdiction, and its decision to do so is reviewed for abuse of discretion.'" *El v. AmeriCredit Financial Services, Inc.*, 710 F.3d 748, 751 (7th Cir. 2013) (quoting *Caribbean Broadcasting*

# BACKGROUND

Llano Financing Group, a Texas limited liability corporation, filed this lawsuit against Bannec and Randall Prince, both of whom were residential real estate appraisers licensed by the State of Indiana. Complaint (DE 6), ¶¶ 1, 3. Llano states that it "is suing in its capacity as agent for Impac Funding Corporation, the master servicer, for DEUTSCHE BANK NATIONAL TRUST COMPANY, ('Trust') a national bank association, which owns the loan that is the subject of this suit. Plaintiff has an ownership interest in the subject matter of the suit." *Id.*, ¶ 2 (capitalization in original). Llano brought this suit based on diversity jurisdiction. *Id.*, ¶ 4. Bannec and Prince appraised a residential property in Gary, Indiana, in August of 2006 and determined that the market value of the property was $80,000.00. *Id.*, ¶ 12; Plaintiff's Exh. A (DE 6-1), p. 2.[3] Based in part on the appraisal report, the property owner obtained a loan for $64,000.00, secured, of course, by the property. *Id.*, ¶ 16. Llano claims that the "Borrower subsequently defaulted and Plaintiff foreclosed on the Property and suffered a loss." *Id.*, ¶ 17. Llano alleges that it "later discovered" that the appraisal report "prepared and submitted to the Lender by Defendants had been negligently prepared and contained material misrepresentations regarding the Property and that the Loan was significantly under-secured." *Id.*, ¶ 18. Llano does

---

*System, Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1091 (D.C.Cir. 1998)). Bannec alleges in his motion that Llano is engaging in champertous litigation, which would provide a basis for dismissal *with* prejudice. But since the court does not reach the merits of that argument, it will not exercise this option.

[3] The appraisal report indicates that Bannec was an appraiser trainee at the time the report was completed and Prince, who was a certified appraiser (as in certified by the State of Indiana, *see* I.C. § 25-34.1-3-8) was Bannec's supervisory appraiser. Both men signed the appraisal report in those capacities, which is why they were both named as defendants. Plaintiff's Exh. A (DE 6-1), p. 19.

not state in its Complaint just how undervalued the property allegedly was, but does offer that it was "far less than $64,000.00 at the time Lender funded the loan. Had Lender known the true market value of the property it would not have funded the loan." *Id.*, ¶ 19. Based on these allegations, Llano asserts state law claims against Bannec for breach of contract, negligent misrepresentation, and professional negligence. *Id.*, pp. 5-9. Additional facts will be discussed below as they become relevant to the court's discussion and analysis.

## STANDARD OF REVIEW

A motion to dismiss for lack of subject-matter jurisdiction calls into question a court's power to decide the merits of the case before it. *See* Fed.R.Civ.P. 12(b)(1). When a defendant makes a jurisdictional challenge, it is the plaintiff's burden to establish that jurisdiction exists. *Apex Digital, Inc. v. Sears, Roebuck, & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). When subject-matter jurisdiction has been challenged, the court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). In addition to any jurisdictional allegations, the court may consider any evidence in the record that may help determine whether there is subject-matter jurisdiction. *Id.* It is the duty of the court to review its jurisdiction over the matter before it may examine the merits of the case, regardless of whether the issue is raised by the parties. *See Ricketts v. Midwest Nat. Bank*, 874 F.2d 1177, 1181 (7th Cir. 1989). In the event that a court concludes that subject-matter jurisdiction does not exist, "the court must dismiss the complaint in its entirety" without examining the merits of the case. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

## DISCUSSION

**I. Lack of Subject-Matter Jurisdiction.**

Bannec's motion asks the court to dismiss this case pursuant to Fed.R.Civ.P. 12(b)(1), arguing that Llano lacks standing to bring this suit and, consequently, the court lacks subject-matter jurisdiction, and subsection 12(b)(6), arguing that Llano fails to plead any valid claim. Motion to Dismiss (DE 19), p. 1. "When a motion to dismiss is brought both for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state an actionable claim under Rule 12(b)(6), the Rule 12(b)(1) motion is addressed first." *Villareal v. Snow*, 1996 WL 28282, at *2 (N.D.Ill. 1996) (citing *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987)).

Bannec's motion is based on a host of arguments, as set forth below, but the standing argument boils down to this: Bannec claims that Llano is out to recover money from him for a deficiency that allegedly resulted from the defaulted loan even though Llano "did not[] request the written appraisal at issue, receive the written appraisal at issue, rely upon the allegedly deficient appraisal at issue, finance a mortgage transaction in reliance upon the appraisal at issue, or suffer any monetary damages whatsoever[.]" Motion to Dismiss, p. 2. In his memorandum in support of his motion, Bannec summarizes his position in terms that can hardly be referred to as equivocal when he writes: "Put simply, Llano buys lawsuits. Its actions are champertous and deceitful." Defendant's Memorandum, p. 1. According to Llano, that "contention is close to being libelous." Plaintiff's Response, p. 2. This is obviously a hotly contested battle, seeing as gauntlets are being thrown about; but Bannec doesn't back down, insisting that "Llano bought and paid for the claims it asserts in this lawsuit[]" and that Llano's actions are "little more than 'thinly veiled champerty . . . ." Defendant's Memorandum, p. 6-7 (citation omitted).

Bannec contends that "Llano's Complaint must be dismissed for the following reasons: (1) Llano's pursuit of this action is nothing more than the champertous purchase of an interest in litigation by a disinterested party; (2) Llano's Complaint fails to sufficiently allege diversity jurisdiction; (3) Llano's lack of standing and the nonexistence of Llano's demonstrable interest in this suit prevents this Court from asserting subject matter jurisdiction; (4) Indiana does not recognize a cause of action for negligent misrepresentation on facts such as those presented in the instant case; (5) Llano's claims are barred by the applicable statutes of limitations; and (6) Plaintiff cannot state legally or factually cognizable claims for breach of contract, negligent misrepresentation, and professional negligence." Defendant's Memorandum, pp. 5-6. Bannec's contentions (1) and (3) are intertwined serve as the foundation for his argument about standing. Whether Llano's actions in bringing this suit (and dozens or even hundreds like it across the country) are champertous is not a determination this court has to make for present purposes. But the arguments Bannec presents on that issue are indeed relevant to the issue of standing, for the reasons explained below.

Bannec summarizes his standing argument as follows:

Llano was not damaged in any way be the alleged deficiencies of the Appraisal. Llano admits that the Lender received and relied upon the Appraisal in issuing the loan. Llano has plead no facts to suggest that it was harmed by the alleged 'under-secured mortgage.' Llano has not alleged that it relied upon the Appraisal. It was not an intended beneficiary or even recipient of the alleged 'agreement' or the Appraisal. Llano inserted itself into a legal claim in which it has no interest except its alleged claim to pursue litigation on behalf of the Trust. . . . Accordingly, Llano has no standing to assert this action and it must be dismissed in its entirety.

*Id.*, p. 7.

Bannec cites the case of *Birner v. General Motors Corp.*, 2007 WL 269847 (C.D.Ill. Jan.

26, 2007) in support of his argument. *Id.*, pp. 6-7. In *Birner*, the district court held that the plaintiff lacked standing when he paid for an assignment of rights from an allegedly injured third-party in order to pursue a suit for money damages, even though the plaintiff was "a complete stranger" to the underlying transaction giving rise to the claim. *Birner*, 2007 WL 269847, at * 3. The court explained that "'[t]he law will not tolerate a principle which will allow a man of litigious disposition to go about the community, hunting up stale claims, or even meritorious ones, against his neighbors, either for the purpose of harassing them, or for speculation.'" *Birner*, 2007 WL 269847, at *2 (quoting *McGoon v. Ankeny,* 11 Ill. 558, 1850 WL 4273 (1850)). Bannec also points to the following information in support of his champerty argument:

> Llano purchases 'assignments' of interest in which it has no stake or claim and files factually and legally baseless lawsuits to extort settlements from appraisers and appraisal companies. Many of the appraisals at issue in the most recent filings occurred nine to ten years ago. Llano and its affiliated entities have filed more than 55 lawsuits in Illinois since August 2015, including 39 cut and paste cases in Cook County, Illinois; 8 others in Will, DuPage, Kane and Lake Counties; and 9 in the Northern and Central Districts of Illinois, as of the date of this motion. . . . Llano has filed six lawsuits in Indiana federal courts, as well. . . . Of course, these numbers do not include the nearly identical 270 cases filed by Llano and its affiliates in Florida, California, New Jersey and Texas.

*Id.*, pp. 1-2 (citing Defendant's Exh. A (DE 20-1)) (court dockets from various state and federal courts). Bannec also notes that that this information is included on a website known as appraiserlawblog.com. *Id.*, p. 2.[4] Bannec contends that "[t]his case shares a common thread with

---

[4] Not surprisingly, the website Bannec references includes articles expressing the opinion that Llano's actions in bringing these hundreds of nearly identical lawsuits are champertous. In fact, there are numerous real estate and appraiser focused websites discussing, and uniformly condemning, Llano's tactics. *See, e.g.*, "The Beginning of the End for Llano Financing, LLC?", October 29, 2015 (available at

6

the hundreds of other cases throughout the country purchased by Llano: (1) Llano has no relationship to the underlying transaction . . . (2) Llano was not a legal or remotely anticipated beneficiary of any alleged 'agreement' or the appraisal at issue; [and] (3) Llano did not suffer any harm as a result of the transaction between the alleged lender and the Defendants in this matter[.]" *Id*.

In its response in opposition to Bannec's motion, Llano does not dwell long on this messy matter of alleged champerty. After protesting that Bannec's accusations are "close to being libelous," Llano reins in its outrage and simply states as follows:

> Stated in a variety of different ways, [Bannec's] main point is that Plaintiff has no business before the court as it has no stake in this litigation. It is in this context that Defendant accuses Plaintiff of champerty and contends the court lacks subject matter jurisdiction. Like almost every other argument he makes, Defendant simply ignores the allegations of the Complaint which allege that in bringing this suit Plaintiff is performing a function of mortgage servicing. It is well recognized that a mortgage loan servicer has standing to sue for injuries suffered by the owner of the mortgage loan.

---

http://www.frea.com/blog/beginning-end-llano-financing-group-llc) (visited February 22, 2016); "The Mass Litigation Phenomenon," August 31, 2015 (available at https://www.appraisalbuzz.com/the-mass-litigation-phenomenon) (visited February 22, 2016); "Mass Litigation Against Appraisers Involving: Impac Funding Corporation [et al.]," (available at http://www.appraiserlaw.com/Pages/LlanoFinancingImpacFunding.aspx (visited February 22, 2016); "Llano Financing Group Update, October 9, 2015," (available at http://www.frea.com/blog/llano-financing-group-update-october-9-2015) (visited February 22, 2016). Bannec, of course, references website articles to shine a light, as it were, on Llano's activities and support his allegation of champerty. This information, however, while it might raise eyebrows, is not relevant to the court's present inquiry, so the court does not consider it. As stated previously, Llano's motivation for bringing this lawsuit goes to the merits (or lack thereof) of its claims and is not an issue the court can address in the absence of subject-matter jurisdiction. The factual allegations in Llano's Complaint fail on their face to establish subject-matter or diversity jurisdiction, and the court need look no further than that to resolve the motion to dismiss.

Plaintiff's Response, p. 2. Llano then goes on to cite a few cases from other jurisdictions in support of its contention that it "is an agent of the master loan servicer for the mortgage holder, Impac. . . . As a sub-servicer of the master servicer [Llano] also has a direct and immediate interest in the right of action." *Id.*, p. 4 (citing *Trust for Certificate Holders of Merrill Lynch Inv'rs, Inc. v. Love Funding Corp.*, 591 F.3d 116 (2d Cir. 2010); *Pineda v. PMI Mortgage Ins. Co.*, 843 S.W.2d 660 (Tex. App. 1992); and *In re Reed*, 532 B.R. 82 (Bankr. N.D. Ill. 2015)). The problem with these authorities is that they are factually and legally distinguishable from the present case. The *Love Funding* case involved a mortgage Trust that sued a loan originator following a mortgagor's default. The Second Circuit held that the actions of the Trust were not champertous under New York law. That decision, however, was based in large part on the fact that the plaintiff Trust had a "preexisting proprietary interest in the loan" and "was the party that would directly suffer the damages of any default . . . ." *Love Funding*, 591 F.3d at 122 (citation omitted). Because of that fact, the appellate court concluded that the plaintiff Trust had a legitimate (i.e., non-champertous) right to pursue a deficiency judgment. In the present case, however, Llano has not pled such a nexis. Llano's conclusory allegations, despite its insistence otherwise, do not establish how Llano acquired the standing it claims to have or how it suffered any damages when the underlying loan, held by a mortgage trust, went into default. In *Pineda*, a more than two-decade old Texas state court case, the court held that a mortgage insurer's right to pursue a deficiency judgment against mortgagors following foreclosure was not champertous under Texas law. But the determinative issue in that case was whether the plaintiff had given consideration for its subrogation rights. *Pineda*, 843 S.W.2d at 674-75. Additionally, the facts giving rise to that case are dramatically different from the instant case in that the plaintiff, a

8

mortgage insurance provider, had paid the lender's claim following default by the borrower in exchange for a "subrogation and assignment agreement and the transfer of the note and supporting loan documents from the lender." *Id*. at 675. Finally, the *Reed* case cited by Llano is, as the citation indicates, a bankruptcy case. The bankruptcy court held that the defendant debtor could not raise a claim of champerty as a defense to an adversary proceeding based only on the debtor's "speculation" that the plaintiff's actions were champertous and, in any event, that such a claim was not cognizable under the Bankruptcy Code. *Reed*, 532 B.R. at 94. In summary, the cases cited by Llano are distinguishable from the case at bar–both factually and legally–and, of course, are not binding authority on this court.

Perhaps Llano decided not to expend too much effort refuting Bannec's "libelous" accusations of champerty because it is convinced that all it needs to do to withstand the motion to dismiss is to rest on its contention that "[i]t is well recognized that a mortgage loan servicer has standing to sue for injuries suffered by the owner of the mortgage loan." Plaintiff's Response, p. 2. What makes this argument smell so bad is that it is nothing more than a generic statement of contract and agency law without any explanation, let alone evidence, that it applies in this case. Put another way, Llano fails to adduce any evidence whatsoever that establishes its standing to bring this lawsuit, instead resting on the assertions in its Complaint to do so. Llano writes that Bannec "argues that Plaintiff is not a real party in interest because it has not sufficiently alleged how it acquired its interest; despite the Complaint explaining how that was done." Plaintiff's Response, p. 3. In other words, because the Complaint states that Llano "is suing in its capacity as agent for Impac Funding Corporation, the master servicer, . . ." and that Llano therefore "has an ownership interest in the subject matter of the suit[,]" (Complaint, ¶ 2), and because this court

"must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor," this court must simply assume that standing exists based on Llano's conclusory allegations. But this argument is hollow, since it ignores other critical aspects of the Rule 12(b)(1) standard of review, to wit: the bare allegations in a complaint can be sufficient to establish standing "*unless* standing is challenged as a factual matter." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015) (citation omitted) (italics added). When that is the case, as it is here, "[t]he party invoking federal jurisdiction bears the burden of establishing the required elements of standing." *Smith v. City of Chicago*, 2015 WL 6859299, at *2, —F.Supp.3d— (N.D.Ill. Nov. 9, 2015) (citing *Johnson v. U.S. Office of Personnel Mgmt.*, 783 F.3d 655, 661 (7th Cir. 2015)). Llano's argument that it has standing is based solely on its self-serving conclusory assertion that it acquired that standing by virtue of being a "sub-servicer" to Impac Lending, who, in turn, was the "master servicer" for the mortgage Trust. But as another district court pointed out, such conclusory assertions are insufficient to overcome a factual challenge to a plaintiff's standing:

> [A] conclusory assertion is insufficient by itself to establish standing. *See Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 43, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (holding that more than "unadorned speculation" and conclusory allegations are required to establish standing); *see also*, *e.g.*, *General Produce Distributors, Inc. v. Professional Benefit Trust Multiple Employer Welfare Benefit Plan & Trust*, [2009 WL 2449025] (N.D.Ill. Aug.7, 2009) (conclusory assertions are insufficient to establish standing to sue); *Chavez v. Illinois State Police*, 1999 WL 592187, at *3 (N.D.Ill. Aug. 2, 1999) ("To the extent the allegations in the complaint directed at the plaintiffs' standing are conclusory . . . the court may disregard them.").

*Shales v. Schroeder Asphalt Services, Inc.*, 2013 WL 2242303, at *7 (N.D.Ill. May 21, 2013).

The distinction between facial and factual challenges to jurisdiction, which Llano fails to

10

recognize (or perhaps deliberately avoids addressing), was explained in detail by the Seventh Circuit in *Apex Digital, Inc. v. Sears, Roebuck & Co.*:

> [There is a] "critical difference between facial and factual challenges to jurisdiction. Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Both *Lujan* [*v. Defenders of Wildlife*, 504 U.S. 555 (1992)] and *Lac Du Flambeau* [*Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490 (7th Cir. 2005)] involved facial attacks because the allegations in the plaintiffs' complaints, even if true, were purportedly insufficient to establish injury-in-fact. *See Lujan*, 504 U.S. at 563–78, 112 S.Ct. 2130 (analyzing why none of the allegations in the plaintiff's complaint satisfied the elements of standing); *Lac Du Flambeau*, 422 F.3d at 496 ("The Secretary argues that LDF lacks standing because it has not adequately *pleaded* an injury in fact." (emphasis added)). In the context of facial challenges, . . . the court does not look beyond the allegations in the complaint, which are taken as true for purposes of the motion. *Lawrence*, 919 F.2d at 1529.
>
> In contrast, a factual challenge lies where "the complaint is formally sufficient but the contention is that there is *in fact* no subject matter jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). . . . The law is clear that when considering a motion that launches a factual attack against jurisdiction, "'[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008) (quoting *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007)); *see also, e.g., United Phosphorus*, 322 F.3d at 946; *Hay v. Ind. State Bd. of Tax Comm'rs*, 312 F.3d 876, 879 n. 2 (7th Cir. 2002); *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999).
>
> This difference between facial and factual attacks on jurisdiction was aptly described by the Third Circuit:
>
>> The facial attack does offer similar safeguards to the plaintiff [as Rule 12(b)(6) and Rule 56]: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under [Rule 12(b)(6) or Rule 56]. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness

> attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.
>
> *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In other words, the district court's ability to consider evidence beyond the pleadings derives from the importance of limiting federal jurisdiction. Because such "jurisdiction cannot be conferred by consent of the parties, if the facts place the district court on notice that the jurisdictional allegation probably is false, the court is duty-bound to demand proof of its truth." *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986).

*Apex Digital*, 572 F.3d at 443-44.

Applying the proper standard for analyzing a factual challenge to jurisdiction, it is clear that Llano has failed to establish standing to bring this lawsuit. Llano's vague, unsupported, and conclusory assertion that it has standing in this case does not make it so. Bannec raised a factual challenge to Llano's standing and Llano presented nothing to quash that challenge. "Once such evidence is proffered, '[t]he presumption of correctness that we accord to a complaint's allegations falls away,' . . . and the plaintiff bears the burden of coming forward with competent proof that standing exists[.]" *Apex Digital*, 572 F.3d at 445 (citations omitted). Llano has failed to meet its burden and this case must be dismissed in its entirety.

**II. Diversity Jurisdiction.**

The vague assertions and allegations in Llano's Complaint not only fail to establish subject-matter jurisdiction, they also fail to establish the existence of diversity jurisdiction. As Bannec puts it, "Llano's own allegations of 'damage' are . . . weak." Bannec argues that Llano's Complaint reveals on its face that the amount in controversy "is clearly an amount less than $75,000 or even $64,000." Defendant's Reply, p. 8. Bannec argues that this fact means there is no diversity jurisdiction and Llano's Complaint should be dismissed for this reason also.

If a plaintiff's "'allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.'" *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006) (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Competent proof is synonymous with the preponderance of the evidence standard. *Id*. at 543; *see also*, *Scott v. Bender*, 948 F.Supp.2d 859, 867-68 (N.D.Ill. 2013). "When the complaint includes a number, it controls unless recovering that amount would be legally impossible. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). When the complaint omits a number, however, the size of the claim must be evaluated in some other way." *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815-16 (7th Cir. 2006). In this case, Llano does not state what the amount in controversy is, other than to allege that it "exceeds $75,000.00." Complaint, ¶ 4. Therefore, the court must try to determine whether the actual amount in controversy meets the jurisdictional threshold. That is not a simple task, given Llano's vague assertions on this point. Llano presents no evidence whatsoever to establish that this element of diversity jurisdiction is met in this case. It only says that "[t]he market value of the Property . . . was far less than $64,000.00 . . ." and that "only a fraction of the Loan was recovered through foreclosure." Complaint, ¶¶ 19, 27. So, the damages in this case would appear to be $64,000 minus whatever "fraction" of that was recovered by the Trust after foreclosure. Obviously this is below the amount required to support diversity jurisdiction. In its prayer for relief, Llano asks for "damages, costs and expenses in an amount in excess of the jurisdictional limits of this Court[.]" Complaint, p. 9. This is not helpful, since nowhere in the Complaint (or in its brief) does Llano explain what "costs and expenses" it seeks, how much money that amounts to, or even if such costs and expenses are properly included in calculating

13

the amount in controversy (since the diversity statute expressly states that "costs" are *not* to be considered when calculating the amount in controversy–*see* 28 U.S.C. § 1332(a)). Just like it does with its arguments on the issue of standing, Llano rests on its vague and conclusory assertions to support its claim that the amount in controversy meets the jurisdictional threshold. "[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *St. Paul Mercury Indem. Co.*, 303 U.S. at 289. The damages allegations in Llano's Complaint fail to support its conclusory allegation that the amount in controversy in this case satisfies the threshold amount required for diversity jurisdiction to exist. This is insufficient and dismissal of this case on this basis is also warranted. *See NFLC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995).

## CONCLUSION

For the reasons discussed above, the motion to dismiss filed by Defendant Richard Bannec (DE 19) is GRANTED and this case is DISMISSED for lack of subject-matter and diversity jurisdiction.

Date: February 25, 2016.

    /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana